**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | No. 3:11cr23-1 |
| | : | No. 3:14cv2386 |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **KAREEM SHABAZZ,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the court for disposition is Defendant Kareem Shabazz's (hereinafter "defendant") motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence (hereinafter "section 2255 motion"). The motion has been fully briefed and is ripe for disposition.

**Background**

On April 10, 2012, the government filed a superseding indictment against defendant, charging him with Brandishing a Firearm During and In Relation to a Crime of Violence, 18 U.S.C. § 924(o); Bank Robbery, 18 U.S.C. § 2113(d) and 2; Using a Firearm in Furtherance of a Crime of Violence, 18 U.S.C. § 924(c)) and 2; Possession of Firearm by a Person Convicted of a Crime Punishable by Imprisonment Exceeding One Year, 18 U.S.C. § 922(g)(1) and § 924(e); and Transportation of a Firearm in Interstate Commerce, 18 U.S.C. § 924(b) and 2. The charges related to a

robbery at M & T Bank in Hanover Township, Pennsylvania.  At the conclusion of a four-day trial, a jury on May 4, 2012, found the defendant guilty on all counts.  (Doc. 112, Verdict).  On August 27, 2012, the court sentenced defendant to a term of life imprisonment.  (Doc. 133).  Defendant appealed his conviction to the United States Court of Appeals for the Third Circuit.  (Doc. 139, Notice of Appeal).  The Third Circuit affirmed his conviction on August 8, 2013.  (Doc. 163, Doc. 164, Judgment and Mandate of the United States Court of Appeals); 533 Fed. Appx. 158 (3d Cir. 2013).  Defendant then filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on December 16, 2013. Shabazz v. United States, 134 S.Ct. 832 (2013).

    Defendant subsequently filed the instant motion and brief in support thereof on December 16, 2014.  (Doc. 167).  We issued a "Notice of Election" pursuant to United States v. Miller, 197 F.3d 644, 652 (3d Cir. 1999).  We informed the defendant that failure to return the notice of election within forty-five days would result in the court ruling upon the motion as filed.  (Doc. 167).  The defendant did not file the notice of election.  Accordingly, we directed the Clerk of Court to serve the motion and brief in support thereof upon the government, and we will rule upon the

motion as filed. The matter has now been briefed and is ripe for disposition.

**Jurisdiction**

As defendant brings his motion under section 2255, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We also have jurisdiction under 28 U.S.C. § 2241 ("Writs of habeas corpus may be granted by . .. the district courts[.]").

**Legal Standard**

A federal prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final,[1] move the sentencing court to "vacate, set aside, or correct" a sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C.

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 establishes a one-year statute of limitations period for section 2255 motions. 28 U.S.C. § 2255(f). That period generally runs from "the date on which the judgment of conviction becomes final." Id. A petitioner's judgment becomes "final" when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires." Clay v. United States, 537 U.S. 522, 527 (2003).

§ 2255(a). A section 2255 motion may attack a federal prisoner's sentence on any of the following grounds: "[1] that the judgment was rendered without jurisdiction, or [2] that the sentence imposed was not authorized by law or otherwise open to collateral attack, or [3] that there has been such a denial or infringement of the Constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . . " 28 U.S.C. § 2255(b).

Section 2255, however, does not afford a remedy for all errors that may have been made at trial or sentencing. United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993). Rather, section 2255 permits relief for an error of law or fact constituting a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Eakman, 378 F.3d 294, 298 (3d Cir. 2004) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)). If the court determines that the sentence was not authorized by law, was unconstitutional, or otherwise open to collateral attack, the court must either vacate the judgment, resentence the prisoner, or grant the prisoner a new trial as appropriate. See 28 U.S.C. § 2255(b). Conversely, a court may dismiss a section 2255 motion where the record shows conclusively that the movant is not entitled to relief. United States

v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

**Discussion**

Defendant, who is African American, now claims that his trial counsel was ineffective for not adequately objecting to the White-Caucasian venire. Evidently, trial counsel Brandon R. Reish moved to dismiss the jury panel on the basis that its racial composition implicated the defendant's rights to a fair and impartial jury trial.  The court denied the motion to dismiss.  At that point Attorney Reish did not move to stay the jury selection process for discovery and an evidentiary hearing on the jury matter.  Reish's failure to seek a stay, discovery and evidentiary hearing amounts to constitutionally ineffective counsel, according to the defendant.  After a careful review, we disagree.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to counsel.  The United States Supreme Court has found that "'the right to counsel is the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as

having produced a just result." Strickland, 466 U.S. at 686.

Thus, under Strickland, to prove that his counsel was deficient at trial or sentencing, a defendant must convince the court of two factors, deficient performance by counsel and prejudice from that deficient performance. "First, the defendant must show that counsel's performance was deficient." Id. at 687. Satisfying the first factor, deficient performance, requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Substandard lawyering is not enough to obtain relief. In assessing an attorney's performance, courts apply a highly deferential level of scrutiny. See Marshall v. Cathel, 428 F.3d 452, 462 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689). This deference is afforded because "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

To satisfy the second factor of the Strickland test, "the defendant must show that the deficient performance prejudiced the defense" by demonstrating that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In other words,

6

"the party claiming ineffective assistance 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Campbell v. Burris, 515 F.3d 172, 184 (3d Cir. 2008) (quoting Strickland, 422 U.S. at 694). "'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings . . . not every error that conceivably could have influenced the outcome undermines the reliability of the proceeding.'" Id. (quoting Strickland, 466 U.S. at 693). Counsel cannot be held to be ineffective for failing to pursue a meritless issue. Werts v. Vaughan, 228 F.3d 178, 203 (3d Cir. 2000).

Relief under section 2255 for ineffectiveness of counsel is only available to defendants who make adequate showings with respect to both factors of the Strickland test. See Strickland, 466 U.S. at 686. Accordingly, "'to merit a hearing, a claim for ineffective assistance of counsel, accepting the veracity of its allegations, must satisfy both prongs of the Strickland test, deficient counsel and prejudice to the defense.'" Campbell, 515 F.3d at 183 (quoting Wells v. Petsock, 941 F.2d 253, 559-60 (3d Cir. 1991)).

Here, the defendant fails to establish prejudice because no merit

exists with regard to the jury pool issue.

Defendant argues that his trial counsel provided ineffective assistance of counsel by not moving to stay the case for discovery and an evidentiary hearing on whether the all White-Caucasian venire violated defendant's right to be tried by an impartial jury. As noted above, for trial counsel's representation to be deemed ineffective defendant must have suffered prejudice from counsel's performance. Here, no prejudice is present because no merit exists to the issue that defendant sought his trial counsel to pursue.

To understand the composition of the venire in the instant case, it is important to understand the process by which potential jurors are selected. Congress set forth the standards for jury selection in the Jury Selection and Service Act, 28 U.S.C. § 1861 et seq. (hereinafter "JSSA"). This statute sets for the country's jury policy as follows: "that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a **fair cross section of the community** in the district or division wherein the court convenes. It is further the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the

8

United States, and shall have an obligation to serve as jurors when summoned for that purpose." 28 U.S.C. § 1861 (emphasis added).

To achieve the objectives of this policy, the JSSA requires that "[e]ach United States district court shall devise and place into operation a written plan for random selection of grand and petit jurors[.]" 28 U.S.C. § 1863(a).  The United States District Court for the Middle District of Pennsylvania has such a plan and it provides that, "[a] master jury wheel is created by selecting names at random from the Commonwealth of Pennsylvania Department of State, Voter Registration List.  Then, names are randomly drawn periodically from the master jury wheel to receive juror qualification questionnaires and summonses to report for grand or petit jury service."  (Doc. 176 at 6 Notice of Process by which names are drawn from master jury wheels).

As Congress explained in the JSSA, a defendant is entitled to a randomly-selected group of citizens, which represents a fair cross-section of the community, from which the jury is selected. See also, Taylor v. Louisiana, 419 U.S. 522, 538 (1975); United States v. Salamone, 800 F.2d 1216, 1218 (3d Cir. 1986).  This law is "narrow in scope and imposes no requirement that a particular petit jury itself consist of representatives from

9

all distinctive groups in the community.  Salamone, 800 F.2d at 1218 (citing Taylor, 419 U.S. at 538).   Here, defendant's challenge is basically that his venire did not represent a fair cross section of the community.

To establish a *prima facie* case of a violation of the "fair cross-section requirement" a defendant must demonstrate:

1) that the group alleged to be excluded is a "distinctive" group in the community;

2) that the representation of this group in venire from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979).

We will address these factors *in seriatim*.

**A.  Distinctive group**

The government does not contest that African-Americans are a distinctive group within the community of the Middle District of Pennsylvania.  (Doc. 173, Govt's Ans. To Petition at 11).   Thus, we will conclude that the first element of the *prima facie* case has been met.  See

Ramseur v. Beyer, 983 F.2d 1215, 1230 (3d Cir. 1992) ("African-Americans are unquestionably a constitutionally cognizable group.").

**B.  Representation of the group in venire in relation to the number of such persons in the community**

The second factor we will examine is whether the representation of African-Americans in venire from which juries are selected is not fair and reasonable in relation to the number of such persons in the community. Here, the government has presented evidence from the Clerk of Court regarding the jury selection process. (Doc. 176).[2]  The evidence includes a statistical analysis of the jury wheel sample compared to the citizen population for age eighteen (18) or over by racial, ethnic and sex classifications. (Doc. 176, at 58-59). The report indicates that at the drawing of the master jury wheel in June 2011, the percentage of Black or African American citizens in the Scranton division of the Middle District of Pennsylvania was 3.8 percent. (Id. at 59). The percentage of Black or African American in the wheel sample was 2.25 percent. (Id.) Therefore,

---

[2]Initially, when filing its brief, the government did not present this evidence. They did, however, rely upon it in their brief. The defendant then moved for discovery of the material. We ordered the government to file the evidence and serve it upon the defendant. The government complied with our order. (Doc. 176). We provided the defendant fourteen (14) days to respond to the evidence, however, he filed no response.

the absolute disparity[3] is 1.55 percent.

We find a fair and reasonable relation between the representation of African Americans in venire from which juries are selected and the number of African Americans in the community.  Several cases from the federal appellate courts where the disparity is higher than 1.55 percent have concluded that no fair cross section claim has been made out.  See Thomas v. Borg, 159 F.3d 1147, 1151 (9th Cir. 1998) (absolute disparity of approximately 5 percent insufficient to make out a far cross section claim); United States v. Pion, 25 F.3d 18, 23 (1st Cir. 1994) (absolute disparity figure of 3.4 percent is a relatively small under representation with regard to Hispanics where they made up 4.2 percent of the population); Ramseur, 983 F.2d at 1232 (3d Cir. 1992) (finding an absolute disparity of 14.1 percent to be of "borderline significance".).

---

[3]The absolute disparity is the "difference between the percentage of a certain population group eligible for jury duty and the percentage of the group who actually appear in the venire."  Ramseur, 983 F.2d at 1232. Other methods exist to examine the disparity between population and representation on the jury wheel, for example, the comparative disparity method.  Where, however, the minority group you are examining make up a small percentage of the population, use of comparative disparity figures is of "questionable probative value."  United States v. Weaver, 267 F.3d 231, 243 (3d Cir. 2001).  We thus focus our analysis on the absolute disparity figures.

With a population of only 3.8 percent and a representation on the jury wheel of 2.25 percent, it is not unexpected that a venire may be chosen with no African Americans at all.  A defendant, however, is not entitled to any particular jury composition.  Rather the constitutional guarantee is that the juror be made up of a randomly selected group of people who represent a fair cross section of the community.  Taylor, 419 U.S. at 538.

**C.  Whether the underrepresentation is due to the systematic exclusion of the group from the jury-selection process**

The last factor is whether any underrepresentation is due to the systematic exclusion of the group from the jury-selection process.  As we have found that no underrepresentation exists, this factor is moot.  We do note, however, that using voter registration records as the source for jurors has been repeatedly upheld by the courts.  See, United States v. Mortimer, 1999 WL 504560 (E.D. Pa. July 14, 1999); United States v. Ortiz, 897 F. Supp. 199 (E.D. Pa. 1995).

**Conclusion**

After a careful examination we find that the defendant has not established *prima facie* case of a violation of the right to have a fair cross-section of the community in the venire.  Accordingly, his counsel was not

ineffective for failing to ask for a stay, discovery and an evidentiary hearing on this matter.  The defendant's section 2255 motion will be denied.  An appropriate order follows.

**Date: February 17, 2016**               **s/ James M. Munley**

                                                     **JUDGE JAMES M. MUNLEY**
                                                     **United States District Court**